UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FRANK FERRACANE,

                     Plaintiff,

   -against-                     **MEMORANDUM and ORDER**

THE UNITED STATES OF AMERICA,         02-CV-1037 (SLT)
HALE TRAILER BRAKE & WHEEL, INC.,
HYUNDAI PRECISION AMERICA, INC.,
HYUNDAI de MEXICO, S.A., DE C.V. and
JOST INTERNATIONAL CORP.,

                     Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

Plaintiff, Frank Ferracane, brings this diversity action to recover for injuries he allegedly sustained on April 27, 2001, when the handle of a crank he was using to lower the landing gear of a semitrailer "snapped back" and struck him in the head. Defendant Jost International Corp. ("Jost"), which manufactured the landing gear assembly at issue, now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendant Jost's motion is granted in part and denied in part.

### **FACTS**[1]

Plaintiff has been a truck driver since 1988 or 1989, when he graduated from MTA Truck Driving School ("MTA") in Corona, California. Defendant Jost's Rule 56.1 Statement at ¶ 12.

---

[1] The following facts are drawn from Jost's Rule 56.1 Statement. Plaintiff's "Counter Statement of Facts Pursuant to Rule 56.1," which doubles as an affirmation in support of the motion, does not contain numbered paragraphs, much less a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." *See* Local Civil Rule 56.1(b) (emphasis omitted). The Local Rules provide that each numbered paragraph in the movant's 56.1 Statement which is not "*specifically* controverted by *a correspondingly numbered paragraph in* the statement required be served by the opposing party" will be deemed to be admitted for purposes of the summary judgment motion. Local Civil Rule 56.1(c) (emphasis in original). Accordingly, all of the factual allegations in Jost's 56.1 Statement are deemed admitted for purposes of this motion.

At the time of the accident alleged in the instant complaint, plaintiff had been working for FSR Trucking for about four months as a "switcher" in the truck yard at the Priority Mail Postage Center in Bethpage, New York. *Id.* at ¶ 9. In that capacity, he used a "tractor" to move semitrailers around the yard, positioning them at loading docks so that they could be loaded or unloaded. *Id.* at ¶¶ 11, 16.

Plaintiff's duties required him to operate semitrailers' "landing gear" – the retractable legs which support the front part of the trailer when the tractor is detached. *Id.* at ¶ 6. This landing gear is operated through the use of a manual crank which raises and lowers the legs. *Id.* at ¶ 8. By his own admission, plaintiff was "very experienced" in operating landing gear, having done so at least 500 times over the course of his career. *Id.* at ¶¶ 18-19. Plaintiff had also received some instruction on the operation of landing gear while attending MTA. *Id.* at ¶ 14.

On April 27, 2001, plaintiff was allegedly operating the landing gear on a trailer owned by defendant Hale Trailer Brake & Wheel, Inc. ("Hale") and manufactured by defendants Hyundai Precision America and Hyundai de Mexico (collectively, "Hyundai") using a landing gear assembly manufactured by Jost. According to plaintiff, he inadvertently continued to turn the crank after the landing gear was fully extended, causing torque to build up. *Id.* at ¶¶ 21, 23. Although the first page of the Jost Operating Instructions manual prominently advises users to "grip the crank handle with both hands," plaintiff was using only one hand at the time. *Id.* at ¶¶ 20, 24-25. The handle slipped from plaintiff's hand and spun backward, striking plaintiff in the head. *Id.* at ¶ 21.

In February 2002, plaintiff commenced this action pursuant to the Federal Tort Claims Act against the United States of America, which allegedly owned or leased the Priority Mail Postage Center and, through the United States Postal Service, contracted with FSR Trucking to

provide services at the Center. Plaintiff also named Hale and Hyundai Precision America as defendants, alleging that both were incorporated in states other than New York and that the amount in controversy was in excess of $75,000, exclusive of interest and costs. Verified Complaint at ¶¶ 7, 14, 25.

This complaint was amended in September 2003 to name Jost and Hyundai de Mexico as additional defendants. As amended, the complaint raises nine causes of action. However, because the fourth, fifth and sixth causes action raise claims solely against the United States and/or Hale, both of whom have been dismissed from the case, only the remaining six causes of action are at issue here.

The first cause of action alleges that defendants breached various express and implied warranties, including warranties that their products were merchantable and fit for their intended purposes. The second cause of action alleges that defendants' products were defective and that defendants are strictly liable to plaintiff. The third cause of action alleges that the defendants were negligent in the manufacture and production of their products, and were "otherwise . . . careless and negligent" in some unspecified way. Amended Verified Complaint at ¶ 134.

The seventh, eighth and ninth causes of action also allege negligence. Each of these three causes of action are identical, except that each names one of the three remaining defendants. These causes of action allege that these defendants had a duty to keep the trailer and hand crank in reasonably safe condition; allowed this equipment "to be, become and remain, in a broken, dangerous, hazardous and defective condition"; and were negligent because, among other things, they failed to prevent persons from using the equipment or to warn users of the equipments' condition. *Id.* at ¶¶ 161-64, 169-72, 177-80.

3

At a pre-motion conference on August 26, 2005, Jost and Hyundai were granted permission to move for summary judgment pursuant to Fed. R. Civ. P. 56. Although Hyundai served plaintiff with motion papers on November 14, 2005, the fully briefed motion was never filed with this Court.[2] Accordingly, this Memorandum and Order addresses only defendant Jost's motion for summary judgment. The issues raised in Jost's motion are set forth in detail in the discussion below.

## DISCUSSION

*The Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)*; Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would not be admissible if testified to at trial. *See*, *e.g.*, *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); Fed. R. Civ. P. 56(e).

---

[2]Hyundai filed the motion papers with the Court on the same date it served the papers on plaintiff, but this submission was stricken for failure to observe the so-called "bundling rule." *See* Individual Motion Practices of Hon. Sandra L. Townes, ¶ III E. For reasons which are unclear, plaintiff responded solely to Jost's motion, and Hyundai's motion was never fully briefed or filed.

*Jurisdiction and Choice of Laws*

Before addressing Jost's arguments for summary judgment, this Court must first determine the basis for its jurisdiction and decide which law to apply to this case. Although both the original complaint and amended complaint in this case specifically allege that this case was brought pursuant to the Federal Tort Claims Act, Verified Complaint at ¶ 6; Amended Verified Complaint at ¶ 6, the United States has now been dismissed from this action. However, both pleadings also allege that all defendants other than the United States are incorporated in states other than New York and that the amount in controversy exceeds $75,000. Verified Complaint at ¶ 7, 14, 25; Amended Verified Complaint at ¶ 7, 14, 26, 36, 47. These allegations suggest that diversity of citizenship exists as an alternative basis for jurisdiction in this case. Therefore, although the United States has been dismissed, this Court nonetheless has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Without specifically addressing the issue, the parties assume that New York law governs this diversity action. This Court, however, is not bound by the parties' assumptions, *see*, *e.g.*, *Kass v. West Bend Co.*, No. 02-CV-3719 (NGG), 2004 WL 2475606, at *11 (E.D.N.Y. Nov. 4, 2004) (applying New Jersey law despite the parties' assumption that New York law applied), and must, therefore, independently assess which law to apply to this case.

"Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state . . . to decide which state's substantive law governs." *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 175 (2d Cir. 2000). "New York Courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White v. ABCO Engineering Corp.*, 221 F.3d 293, 301 (2d Cir. 2000). Courts "look only to those facts or contacts that relate to the purpose of the particular laws in conflict," which are, "'almost

*Jurisdiction and Choice of Laws*

Before addressing Jost's arguments for summary judgment, this Court must first determine the basis for its jurisdiction and decide which law to apply to this case. Although both the original complaint and amended complaint in this case specifically allege that this case was brought pursuant to the Federal Tort Claims Act, Verified Complaint at ¶ 6; Amended Verified Complaint at ¶ 6, the United States has now been dismissed from this action. However, both pleadings also allege that all defendants other than the United States are incorporated in states other than New York and that the amount in controversy exceeds $75,000. Verified Complaint at ¶ 7, 14, 25; Amended Verified Complaint at ¶ 7, 14, 26, 36, 47. These allegations suggest that diversity of citizenship exists as an alternative basis for jurisdiction in this case. Therefore, although the United States has been dismissed, this Court nonetheless has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Without specifically addressing the issue, the parties assume that New York law governs this diversity action. This Court, however, is not bound by the parties' assumptions, *see*, *e.g.*, *Kass v. West Bend Co.*, No. 02-CV-3719 (NGG), 2004 WL 2475606, at *11 (E.D.N.Y. Nov. 4, 2004) (applying New Jersey law despite the parties' assumption that New York law applied), and must, therefore, independently assess which law to apply to this case.

"Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state . . . to decide which state's substantive law governs." *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 175 (2d Cir. 2000). "New York Courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White v. ABCO Engineering Corp.*, 221 F.3d 293, 301 (2d Cir. 2000). Courts "look only to those facts or contacts that relate to the purpose of the particular laws in conflict," which are, "'almost

exclusively, the parties' domiciles and the locus of the tort.'" *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (quoting *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985)).

In this case, New York is both plaintiff's domicile and the situs of the accident at issue. The three remaining defendants are incorporated in states other than New York, but are alleged to have conducted business within this State and to have received substantial revenue from that business. Accordingly, this Court agrees with the parties that it is appropriate to apply New York law in this case. *See*, *e.g.*, *Kass*, 2004 WL 2475606, at *11 (applying the law of the state in which the accident occurred and in which the plaintiffs' resided, even though the defendant was incorporated and had its main office in other states).

"In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability": express or implied breach of contract, negligence or strict products liability. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 401 (1983). Plaintiff in this case advances all four theories, and defendant Jost now moves for summary judgment as to each theory. With respect to plaintiff's strict products liability and negligence claims, Jost argues (1) that plaintiff cannot proceed under a defective design theory because he has not shown that a feasible, safer design exists and (2) that plaintiff cannot proceed under a failure-to-warn theory because he is a "knowledgeable user" of landing gear. In addition, Jost argues that plaintiff cannot adduce proof to sustain his express and implied warranty claims.

***Strict Product Liability***

"As the law of strict products liability has developed in New York, a plaintiff may assert that the product is defective because of a mistake in the manufacturing process . . .[,] because of

an improper design . . .[,] or because the manufacturer failed to provide adequate warnings regarding the use of the product." *Voss*, 59 N.Y.2d at 106-07, 463 N.Y.S.2d at 401; *see also Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d. Cir. 1991). Jost, believing that plaintiff is not seeking to assert a manufacturing defect, addresses only the defective design and failure-to-warn theories.

### *Defective Design*

"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use." *Scarangella v. Thomas Built Buses, Inc.*, 93 N.Y.2d 655, 659, 695 N.Y.S.2d 520, 522 (1999) (internal quotations and citation omitted). "[T]he strict liability concept of 'defective design' [is] functionally synonymous with the earlier negligence concept of unreasonable designing." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 255 (1995) (internal quotations and citations omitted; brackets in original). "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Voss*, 59 N.Y.2d at 107, 463 N.Y.S.2d at 402.

The issue of whether a "product as marketed was reasonably safe for its intended use is determined by whether a reasonable person with knowledge of the potential for injury of the product and of the available alternatives, balancing the product's risks against its utility and costs and against the risks, utility and cost of the alternatives, would have concluded that it should not have been marketed in the condition that it was." *Cover v. Cohen*, 61 N.Y.2d 261, 266-67, 473 N.Y.S.2d 378, 380 (1984). In *Voss*, the New York Court of Appeals "identified seven

nonexclusive factors to be considered in balancing the risks created by the product's design against its utility and cost." *Scarangella*, 93 N.Y.2d at 659, 695 N.Y.S.2d at 522 (citing *Voss*, 59 N.Y.2d at 109, 463 N.Y.S.2d at 402-03). Among these is "the availability of a safer design," "the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced," and "the manufacturer's ability to spread any cost related to improving the safety of the design." *Voss*, 59 N.Y.2d at 109, 463 N.Y.S.2d at 402-03. The *Voss* Court recognized that not all seven factors would be applicable in every case. *Id.*, 59 N.Y.2d at 109, 463 N.Y.S.2d at 403 ("Pertinent factors in the individual case, when evaluated as to whether or not they are applicable, should form the basis for charging the jury"). Rather, the Court emphasized that the jury was "to decide whether a product was not reasonably safe in light of all the evidence presented by both the plaintiff and defendant." *Id.*, 59 N.Y.2d at 108, 463 N.Y.S.2d at 402. However, the Court also stated that the plaintiff was, "of course, . . . under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.*

Relying on this language, district courts in this Circuit and intermediate appellate courts in New York State have required that a plaintiff seeking to impose strict liability for design defects show that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury. *See*, *e.g.*, *Barban v. Rheem Textile Sys.*, *Inc.*, No. 01-CV-8475 (ILG), 2005 WL 387660, at *8 (E.D.N.Y. Feb. 11, 2005), *aff'd*, 147 Fed. Appx. 222 (2d Cir. 2005); *G.E. Capital Corp. v. A.O. Smith Corp.*, No. 01 Civ. 1849 (LAP), 2003 WL 21498901, at *4 (S.D.N.Y. July 1, 2003) (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 60 (S.D.N.Y. 2001)); *Abar v. Freightliner Corp.*, 208 A.D.2d 999, 1000-1001, 617

N.Y.S.2d 209, 212 (N.Y. App. Div. 3d Dep't 1994) (quoting *De Matteo v. Big V Supermarkets Inc.*, 204 A.D.2d 932, 933, 611 N.Y.S.2d 970, 971 (N.Y. App. Div. 3d Dep't 1994)). The Court of Appeals has never expressly adopted or approved this formulation; to the contrary, in cases subsequent to *Voss*, the Court of Appeals has emphasized that the determination of whether a product is reasonably safe is to be based on the factor-based risk/utility analysis, in which the availability of a safer design and the economic feasibility of designing and manufacturing a safer alternative are but two factors. *See*, *e.g.*, *Scarangella*, 93 N.Y.2d at 659, 695 N.Y.S.2d at 522-23; *Denny*, 87 N.Y.2d at 256-57, 639 N.Y.S.2d at 254-55. Nonetheless, it now appears well established in New York state courts that in order "to establish a prima facie case based on a design defect, plaintiff must offer evidence that it was feasible to design the product in a safer manner and that the proposed design would have prevented some of plaintiff's injuries." 1A N.Y. Pattern Jury Instructions, Comment to § 2:141, at 724-25 (3d ed. 2007) (citing cases).

Few federal or state cases elaborate on what evidence a plaintiff must offer to satisfy this burden. However, it is clear that "unsupported, conclusory evidence on the technological and economic feasibility of a safer design" is insufficient. *G.E. Capital Corp.*, 2003 WL 21498901, at *4 (quoting *Gonzalez by Gonzalez v. Morflo Indus., Inc.*, 931 F.Supp. 159, 166 (E.D.N.Y. 1996)). In *Gonzalez*, for example, Judge Gleeson granted summary judgment to the defendant in a case in which the plaintiff's expert testified to "hypothetical designs" which had never been tested, did not testify to the cost or feasibility of the proposed design changes and could not name a single manufacturer who had ever used the proposed designs. *Gonzalez*, 931 F.Supp. at 166. Similarly, in *Sita v. Danek Medical, Inc.*, 43 F. Supp. 2d 245 (E.D.N.Y. 1999), Judge Trager granted summary judgment in favor of the defendant where the plaintiff's expert testified

9

that a surgical device using "hooks instead of screws" or "no system at all" would be safer than the defendant's "spine screws," but was "unable to offer or cite any evidence to support these conclusory arguments." *Id.* at 258.

This case is strikingly similar to *Gonzalez*. Plaintiff's expert report asserts that "[s]afe alternatives . . . exist" to the design of the landing gear at issue. *See* Report of Dr. Robert L. Grunes, dated Dec. 8, 2004 (Ex. F to the Affidavit of Frank J. DeAngelis in Support of Defendant's Motion for Summary Judgment ("DeAngelis Aff.") at 10. However, the report itself not only provides no details concerning these alternatives, but also contains language suggesting that the alternatives are entirely hypothetical:

> One design approach *would be* the incorporation of a slip clutch so as to limit the force accumulation and consequently minimize the reaction force. Other alternatives include the *potential* use of a ratchet device to resist the spontaneous reverse reaction rotation.

*Id.* (emphasis added).

In support of its motion for summary judgment, Jost has attached portions of Dr. Grunes' March 28, 2005, deposition which highlight the hypothetical nature of the proposed alternatives. At that deposition, Dr. Grunes testified that he was not aware of any manufacturer who used either a "slip clutch" or a "ratchet system" in its landing gear. *See* Deposition of Robert Grunes (Ex. G to DeAngelis Aff.) at 73-74. In addition, Dr. Grunes admitted that he had not tested either of the alternative designs, or created a drawing, mock-up or prototype of the "slip clutch landing gear." *Id.* at 74, 82.

Dr. Grunes' report and deposition testimony are insufficient to establish that feasible, safer alternatives to the landing gear at issue exist. The "slip clutch" and "ratchet system" which Dr. Grunes proposes are "hypothetical designs," which have not been tested. Dr. Grunes cannot

name a single manufacturer who has ever used the proposed designs in landing gear. Moreover, Dr. Grunes did not testify to the cost or feasibility of the proposed designs.

Plaintiff's response to Jost's motion for summary judgment does not suggest that Dr. Grunes can offer more evidence to substantiate his claim that safer alternatives exist. Indeed, plaintiff's responsive papers do not include any additional evidence from Dr. Grunes or from any other expert with respect to alternative designs. Rather, plaintiff relies exclusively on the above-quoted paragraph from Dr. Grunes' report, asserting that it "offer[s] two feasible design alternatives, a slip-clutch system or ratchet system[,] which would have prevented the violent reversal of the crank handle." Plaintiff's Brief in Opposition at 4. As discussed above, however, this evidence is insufficient to sustain plaintiff's burden of showing a feasible, safer alternative. *See Gonzalez*, 931 F.Supp. at 166. Accordingly, defendant Jost's motion for summary judgment is granted with respect to that portion of plaintiff's strict products liability and negligence claims which allege a defective design.

### *Failure to Warn*

Plaintiff also seeks to impose strict liability upon defendants under the theory that defendants failed to provide adequate warnings. A failure-to-warn claim, "though it may be couched in terms of strict liability, is indistinguishable from a negligence claim." *Enright by Enright v. Eli Lilly & Co.*, 77 N.Y.2d 377, 387, 568 N.Y.S2d 550, 555 (1991). Under New York law, "[a] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764, 766 (1998) (quoting *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297, 582 N.Y.S.2d 373, 376 (1992)). A plaintiff must show a breach of that duty, and "that the failure to warn was the proximate cause of his [or her] injury." *Henry v. Rehab Plus Inc.,*

11

404 F. Supp. 2d 435, 442 (E.D.N.Y. 2005); *see Howard v. Poseidon Pools, Inc.*, 72 N.Y.2d 972, 974, 534 N.Y.S.2d 360, 361 (1988).

"In duty to warn cases, New York recognizes two circumstances that would preclude a finding of proximate cause: obviousness and the knowledgeable user." *Andrulonis v. United States*, 924 F.2d 1210, 1222 (2d Cir.), *vacated on other grounds sub nom. New York State Dep't of Health v. Andrulonis*, 502 U.S. 801, *and reinstated following remand*, 952 F.2d 652 (2d Cir. 1991); *see also Colon*, 199 F. Supp. 2d at 85 (quoting *Hutton v. Globe Hoist Co.*, 158 F. Supp. 2d 371, 376 (S.D.N.Y. 2001)). Jost argues that plaintiff fits within the knowledgeable user doctrine or exception because he was very experienced in the operation of landing gear. Jost's Memorandum of Law in Support of its Motion for Summary Judgment ("Jost's Memo") at 10. In support of this argument, Jost adduces evidence that plaintiff had been trained in the proper operation of landing gear while at MTA, had operated landing gear over 500 times in the course of his employment, and believed that he did not need further training. *Id.*

While this showing amply demonstrates that plaintiff is knowledgeable in the operation of landing gear, it is insufficient to demonstrate that the knowledgeable user exception applies in this case. "[T]he knowledgeable user exception applies only where the user is actually aware of the precise danger involved." *Andrulonis*, 924 F.2d at 1223. Indeed, the user must not only know of the particular risk he or she faces, but must also be aware of the severity of the potential harm. *See Donald v. Shinn Fu Co.*, No. 99-CV-6397 (ARR), 2002 WL 32068351, at *9 (E.D.N.Y. Sept. 4, 2002) (citing *Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240, 244 (2d Cir. 1980)).

In this case, Jost has not adduced any evidence to suggest that plaintiff was aware of any

dangers involved in the operation of landing gear, much less the specific danger posed by overcranking. In addition, Jost has not presented any evidence that plaintiff was aware of the severity of the potential harm that might result from this particular danger. Therefore, Jost has not met its burden of establishing that the knowledgeable user exception is applicable in this case.

Even assuming that Jost had met its burden, this Court still could not grant summary judgment with respect to plaintiff's failure-to-warn claim. Plaintiff has introduced evidence that, prior to his accident, he had neither seen nor heard of an incident in which the crank snapped back in the manner that allegedly caused his injury. *See* Deposition of Frank Ferracane, dated May 14, 2003 (Ex. A to the Affirmation of Anthony La Trace in Opposition to Jost's Motion) at 210. This evidence alone would be sufficient to create a genuine issue concerning plaintiff's actual knowledge of the danger, which would preclude summary judgment. *See*, *e.g.*, *Liriano*, 92 N.Y.2d at 241, 677 N.Y.S.2d at 769; *Jiminez v. Dreis & Krump Mfg. Co.*, 736 F.2d 51, 55-56 (2d Cir. 1984). Accordingly, Jost's motion for summary judgment is denied with respect to that portion of plaintiff's strict products liability and negligence claims which alleges a failure to provide adequate warnings regarding the use of the landing gear.

*Warranties*

Plaintiff also seeks to recover damages based on contractual theories, alleging breach of both express and implied warranties. Section 2-313 of the Uniform Commercial Code sets forth the three ways in which an express warranty by a seller can be created. First, "[a]ny affirmation of fact or promise made by the seller to [a] buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the

13

affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Second, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1)(b). Third, "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. N.Y. U.C.C. § 2-313(1)(c). Absent evidence of some affirmation of fact, promise, description, sample or model, there is no basis for alleging a breach of an express warranty. *See*, *e.g.*, *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133 (GBD), 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004); *Fireman's Fund Ins. Co. v. New York Gen. Mechanical, Inc.*, No. 88-CV-268E, 1992 WL 119162, at *4 (W.D.N.Y. May 22, 1992); *Jones by Jones v. Lederle Laboratories, a Div. of Am. Cyanamid Co.*, 695 F.Supp. 700, 709 (E.D.N.Y. 1988).

In moving for summary judgment in this case, Jost asserts that "plaintiff has not come forward with any proof whatsoever that Jost made representations or promises regarding the landing gear to plaintiff." Jost's Memo at 11. Contrary to Jost's assertion, plaintiff need not show that Jost made the representations or promises directly *to plaintiff*. U.C.C. § 2-318 provides that "[a] seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." However, plaintiff has not adduced evidence that Jost made affirmations of fact or promises to *anyone*. Indeed, plaintiff's response does not even address Jost's arguments with respect to the breach of warranty claim. Accordingly, Jost's motion for summary judgment with respect to plaintiff's express warranty claim is granted.

Plaintiff's implied breach of warranty claim is presumably based on N.Y. U.C.C. § 2-

314, which provides that a warranty of merchantability is implied in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind. To be merchantable, goods must be, among other things, "fit for the ordinary purposes for which such goods are used." N.Y. U.C.C. § 2-314(2)(c). The warranty of fitness for ordinary purposes is not a guarantee that the product will be perfectly safe or "fulfill [a] buyer's every expectation." *Denny*, 87 N.Y.2d at 258 n. 4, 639 N.Y.S.2d at 256, n. 4 (quotations and citation omitted; brackets in original). Rather, "such a warranty 'provides for a minimal level of quality.'" *Id.* (quoting *Skelton v. General Motors Corp.*, 500 F.Supp. 1181, 1191 (N.D. Ill 1980), *rev'd on other grounds*, 660 F.2d 311 (7th Cir. 1981)). Recovery under an implied warranty theory "may be had upon a showing that the product was not minimally safe for its expected purpose." *Id.*, 87 N.Y.2d at 259, 639 N.Y.S.2d at 256. However, goods that are "doing what they were supposed to do for as long as they were supposed to do it . . . clearly [live] up to that 'minimum level of quality' which is all U.C.C. 2-314(2)(c) requires." *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 449 (W.D.N.Y. 2001); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y. 1982).

In its motion for summary judgment, Jost argues that plaintiff has presented no evidence that the landing gear in question failed to satisfy section 2-314(2)(c)'s requirements. Jost's Memo at 11. Plaintiff fails to respond directly to this argument or to present any evidence that the landing gear was "not minimally safe for its expected purpose." To the contrary, plaintiff's responsive papers tend to substantiate Jost's argument by making the point that neither plaintiff nor "witnesses from Hale and Hyundai, users and manufacturers of trailer landing gear, were . . . aware" of the alleged defect. Plaintiff's Memo at 5. These allegations suggest that, although the

15

landing gear may not have been perfect, the alleged defect rarely evidenced itself and did not substantially detract from the overall quality of the product. Accordingly, Jost's motion for summary judgment with respect to plaintiff's implied warranty claim is also granted.

## CONCLUSION

For the reasons stated above, defendant Jost's motion for summary judgment is granted with respect to plaintiff's express and implied warranty claims, and so much of plaintiff's strict products liability and negligence claims as asserts a defective design. Defendant Jost's motion is denied, however, with respect to that portion of plaintiff's strict liability and negligence claims which alleges failure to provide adequate warnings regarding the use of the landing gear at issue.

**SO ORDERED.**

                                            /s/
                                     SANDRA L. TOWNES
                                     United States District Judge

Dated: Brooklyn, New York
       January 29, 2007